UNITED STATES of America

v.

Glenwood M. FORD, Appellant.

No. 88–3061.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 10, 1989.

Decided March 24, 1989.

Thomas W. Farquhar, Washington, D.C., (appointed by the Court) for appellant.

Bruce L. Delaplaine, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, Helen M. Bollwerk, and Scott L. Fredericksen, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before STARR, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

Appellant Glenwood M. Ford and his co-defendant Timothy A. Green were indicted and charged with conspiracy to distribute phencyclidine, 21 U.S.C. § 846, and aiding and abetting in the distribution of phencyclidine ("PCP") 21 U.S.C. § 841(a) and 18 U.S.C. § 2. Appellant and his co-defendant (who has not appealed) were tried together and convicted as charged. The sole issue is whether the District Court committed reversible error by denying Ford's motion for severance. We conclude that it did not and therefore affirm.

I

On the evening of October 1, 1987, Investigator Peter Markland of the United States Park Police, in the company of two other officers, drove to southeast Washington, D.C. in order to make an undercover purchase of liquid PCP. Transcript (Tr.) at 34–35. With his two colleagues remaining in the van, Investigator Markland met co-defendant Timothy Green inside an apartment building. Green, acting as middleman, agreed to sell Markland four bottles of PCP for $1200. Tr. at 36–37. After some initial wrangling over suppliers, Green sent Markland back to his van to wait for the drugs. Tr. at 38.

According to Markland's testimony, Green—accompanied by appellant Glenwood Ford—walked up to the van shortly thereafter and told Markland that appellant could promptly supply any amount of PCP. For his part, appellant agreed to the terms of the Markland–Green understanding, and explained that he had to repair to his house to measure out the drugs. Tr. 40–41. After fifteen minutes, appellant and Green returned to Investigator Markland's van. The two men were in an automobile with D.C. personalized license tags reading "Mr. Glen." Ford was driving; a small child sat between the two men. Tr. at 42, 90.

The transaction was then carried out in the van between Green and Investigator Markland. During this episode, Ford remained in his car. At one point, when Investigator Markland expressed concern about security, Green was reassuring: "Don't worry. Nobody is going to bother us. Glen's got a gun." Tr. at 42. At another point, when Investigator Markland inquired about future purchases, Green opined, "Glen's water is the best around. He can deliver quarts any time, any place." Tr. at 46.[1] Later that month, appellant was arrested on a warrant when he responded to the Park Police Station to reclaim his automobile. Tr. at 101–02.

Appellant took the stand in his own defense. He testified that he had met Green, a previous acquaintance, on the night in question. Green was having car trouble and asked appellant for a ride. Despite having his stepson in the car, appellant complied. Tr. at 144–46. Ford subsequently drove Green to several different destinations, including three stops at the parking lot where Investigator Markland's van was located. On the second of these occasions, appellant waited while Green got out of the car and entered the van. Tr. at

148–49. When Green returned, appellant drove him to a liquor store and then back to the parking lot. Green did not testify.

## II

The severance issue arose on the day of trial. The government had previously made a plea offer whereby the conspiracy count would be dropped if both defendants pled guilty to the distribution charge. Green was willing to plead, but appellant was not. In light of this divergence in the co-defendants' positions, appellant moved for severance. In support of his motion, appellant reiterated what Green's counsel had already asserted, namely, that Green would not testify in a joint trial. Next, appellant's counsel stated that he had talked to Green that morning in the presence of the latter's counsel and was led to believe that Green would provide "exculpatory evidence for Mr. Ford" if the trials were severed. Tr. at 10. Green's counsel supported this assertion, indicating that Green would testify in a separate trial to the effect that appellant had "nothing to do with the transaction." Tr. 15. The District Court denied the motion, concluding that it was untimely and without basis. *Id.*

### A

In light of the language of Rule 14, Fed.R.Crim.P.,[2] the District Court enjoys wide discretion in determining whether to sever the trials of defendants who have properly been joined. *See Opper v. United States,* 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954); *United States v. Sutton,* 801 F.2d 1346, 1363 (D.C.Cir.1986). Further, "[i]n light of the Government's strong interest in favor of joint trials, this Court has struck a balance in favor of joinder." *United States v. Perry,* 731 F.2d 985, 992

---

**1.** The testimony at trial indicated that "water" is a street name for PCP. Tr. at 36.

**2.** Rule 14 of the Federal Rules of Criminal Procedure provides:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials

of counts, grant a severance of defendants or provide whatever relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

(D.C.Cir.1984); *see United States v. Hines,* 455 F.2d 1317, 1334 (D.C.Cir.1971), *cert. denied,* 406 U.S. 975, 92 S.Ct. 2427, 32 L.Ed.2d 675 (1972); Fed.R.Crim.P. 8(b). The joinder presumption is especially strong where, as here, "the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve two defendants who are charged, *inter alia,* with participating in the same illegal acts." *Sutton,* 801 F.2d at 1365.

Here, Ford's claim is that the trial court's denial of his motion effectively precluded his co-defendant, Green, from providing exculpatory testimony. Not only was he deprived of testimony absolving him of wrongdoing, appellant asserts, but he was also unable to elicit testimony rebutting damaging statements allegedly made by Green but admitted through the testimony of Investigator Markland. For these reasons, appellant contends, he was denied a fair trial.

### B

 Heretofore, this court has not had occasion to set forth a standard to govern the disposition of severance motions based on the asserted need for a co-defendant's testimony. We are not, however, without guidance on this issue. To the contrary, several of our sister circuits have provided a sensible, thoughtful analysis of this question. To establish a *prima facie* case for severance on the ground urged here by appellant, the movant must demonstrate: (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) the exculpatory nature and effect of the testimony; and (4) the likelihood that the co-defendant will testify if the cases are severed. Once the movant makes that threshold showing, the trial court must then: (1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider the effects on judicial administration and economy; and (4) give weight to the timeliness of the motion. *See United States v. Machado,* 804 F.2d 1537, 1544

(11th Cir.1986); *United States v. Daly,* 756 F.2d 1076, 1080 (5th Cir.), *cert. denied,* 474 U.S. 1022, 106 S.Ct. 574, 575, 88 L.Ed.2d 558 (1985); *United States v. Drougas,* 748 F.2d 8, 19 (1st Cir.1984); *United States v. Parodi,* 703 F.2d 768, 779 (4th Cir.1983); *United States v. Finkelstein,* 526 F.2d 517, 523–24 (2d Cir.1975), *cert. denied,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976); *see generally,* 1 C. Wright, Federal Practice & Procedure, § 225, p. 832 (2d ed. 1982).

Other circuits employ different language, but focus essentially on the same concerns. *See, e.g., United States v. Blanco,* 844 F.2d 344, 352–53 (6th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 2042, 100 L.Ed.2d 626 (1988); *United States v. Mabry,* 809 F.2d 671, 682 (10th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 33, 98 L.Ed.2d 164 (1987); *United States v. DeLuna,* 763 F.2d 897, 920 (8th Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985); *United States v. Boscia,* 573 F.2d 827, 832 (3d Cir.), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2248, 56 L.Ed.2d 411 (1978); *United States v. Kaplan,* 554 F.2d 958, 966 (9th Cir.), *cert. denied,* 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977).

### C

 Upon review of this record, we are not persuaded that appellant met his threshold burden. First, Ford did not demonstrate a *reasonable probability* that the proffered testimony would be forthcoming. *Parodi,* 703 F.2d at 779. Although both Ford and Green (through counsel) asserted that the latter was willing to testify if the trials were severed, this offer was conditioned on Green's case being tried first. *See* Tr. at 14–15; *see also* Brief for Appellants at 16 ("If these cases were severed and Green's case were tried first, Green indicated he would testify for Ford."). This tack has received judicial disapprobation elsewhere. Our sister circuits have concluded, rightly we believe, that "Rule 14 [should not be read] as a mechanism for alleged co-conspirators to control the order in which they are tried." *Blanco,* 844 F.2d at 353; *see Parodi,* 703 F.2d at 779; *Unit-*

ed States v. Espinosa, 771 F.2d 1382, 1408 (10th Cir.), cert. denied, 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985); United States v. Ruppel, 666 F.2d 261, 268–69 (5th Cir.), cert. denied, 458 U.S. 1107, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982); United States v. Gay, 567 F.2d 916, 919–20 (9th Cir.), cert. denied, 435 U.S. 999, 98 S.Ct. 1655, 56 L.Ed.2d 90 (1978). Thus, appellant's conditional showing does not satisfy the requirement that he demonstrate a reasonable probability of Green's willingness to testify.

Although appellant's inability to meet the "willingness to testify" requirement is sufficient to dispose of his claim, see Parodi, 703 F.2d at 781, another factor stands in support of the District Court's decision: Appellant has failed to meet the burden of establishing with requisite specificity the exculpatory "nature and effect" of his co-defendant's testimony. Parodi, 703 F.2d at 780; see United States v. Butler, 611 F.2d 1066, 1071 (5th Cir.), cert. denied, 449 U.S. 830, 101 S.Ct. 97, 66 L.Ed.2d 35 (1980); United States v. Provenzano, 688 F.2d 194, 199 (3d Cir.), cert. denied, 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982). This requirement demands more than conclusory statements by counsel; rather, the showing must be sufficiently definite in nature to allow the court reasonably to conclude that the testimony would in fact be "substantially exculpatory." DeLuna, 763 F.2d at 920; see Espinosa, 771 F.2d at 1408; Parodi, 703 F.2d at 780.

In this case, the nature of Green's expected testimony was addressed by counsel on three separate occasions. First, when appellant's counsel initially moved for severance, he simply stated his belief that Green would provide exculpatory evidence. Tr. at 10. Later, Green's counsel added his understanding of Green's expected testimony (that appellant "had nothing to do with

the transaction"). Tr. at 15. Finally, at the close of the government's case, appellant's counsel raised the severance issue again, stating that Green "would testify that Mr. Ford never got out of the car and didn't participate in the transaction." Tr. at 141.

None of these statements are of sufficient specificity to warrant overturning the District Court's determination. In essence, these statements reduce to a reaffirmation of appellant's "not guilty" plea. They represent an assertion of ultimate fact, but do not provide the specific facts necessary for the District Court to determine that the movant "will be unable to obtain a fair trial without severance." Parodi, 703 F.2d at 780; see, e.g., United States v. McConnell, 749 F.2d 1441, 1444–45 (10th Cir.1984). Not only do the representations lack specificity, but the references to appellant's lack of involvement with "the transaction" are not necessarily exculpatory. The second reference can reasonably be understood as a claim that Ford was not involved in the final transfer of drugs for money in Investigator Markland's van. But the government never claimed that Ford was directly participating in the consummation of the transaction; to the contrary, according to Inspector Markland's testimony, Ford remained in his car during the final phases of the exchange. Tr. at 53. In short, appellant has done no more than allege that he "might have a better chance of acquittal if tried separately." United States v. Wright, 783 F.2d 1091, 1095 (D.C.Cir.1986). Such allegations do not warrant reversal. See id.; United States v. Perry, 731 F.2d 985, 992 (D.C.Cir.1984); Espinosa, 771 F.2d at 1409.[3]

This conclusion is supported by another factor, namely, the extent to which the proffered exculpatory testimony could be

---

**3.** Appellant claims that the District Court "refused" his offer, made at the close of the government's case, to hear Green's allegedly exculpatory testimony outside the presence of the jury. See Brief for Appellant at 17; Tr. at 141. The record does not support this charge. Rather, the court stated that the subject could be discussed later. Tr. at 141. Although appellant did not object to the trial court's deferral (nor

does he directly press the claim here), we cannot fault the trial court's failure to reconsider appellant's request sua sponte. The burden of establishing grounds for severance is, of course, always on the movant; a part of this burden is the obligation, commonly understood, at least to remind the court of issues that have been deferred to a later time.

impeached. *See, e.g., DeLuna,* 763 F.2d at 920; *Provenzano,* 688 F.2d at 199. Had Green testified that appellant played no part whatever in the conspiracy, Green would have been subject to impeachment by virtue of his highly inculpatory statements to Investigator Markland about Ford. *See supra,* p. 730. The grave damage to Green's potential testimony wrought by these statements is another factor cutting in favor of the District Court's determination. *See United States v. Mabry,* 809 F.2d 671, 682 (10th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 33, 98 L.Ed.2d 164 (1987); *Parodi,* 703 F.2d at 780; *see also United States v. Taylor,* 562 F.2d 1345, 1362–63 (2d Cir.) (court found co-defendant's proposed testimony unreliable because "his then-anticipated conviction for the conspiracy charged in this indictment would have subjected his testimony to significant impeachment ..."), *cert. denied,* 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977).

Appellant stresses that, unlike multi-defendant conspiracy cases, the only witness capable of exculpating him in this case is his co-defendant. This, in appellant's view, maximizes the fairness concerns presented in treating motions to sever. In this particular, he relies on Judge Sobeloff's opinion in *United States v. Shuford,* 454 F.2d 772 (4th Cir.1971). Appellant adds that this was a straightforward case factually, which would therefore minimize the burdens on the court in trying the two cases separately.

There can be no doubt that fairness values are implicated in the circumstance where the only available witness is one's solitary co-defendant. But this factor, while weighing in favor of the severance motion, is nonetheless strongly outweighed by appellant's failure to meet the other, traditionally recognized concerns articulated in the wide array of authorities from our sister circuits. As to appellant's "minimal burden" argument, to carve out a "simple-trial" exception to the principles that otherwise obtain in severance issues would have obvious and deleterious systemic effects. These effects are properly to be taken into account by the courts, even if, in this particular case, separate trials would have occasioned an insubstantial allocation of additional resources.

In sum, appellant did not lay the requisite foundation for the trial court's further consideration of his motion to sever. What is more, the District Court was well within its broad discretion in taking the timeliness of appellant's motion into account. *See Butler,* 611 F.2d at 1071 (motion for severance found untimely "as it was not made before the trial began and there was no showing that it was based on grounds not known prior to trial"). Under these circumstances, we find no abuse of discretion.

*Affirmed.*