**UNITED STATES of America**

v.

**Tommy EDELIN, Earl Edelin, Shelton Marbury, Henry Johnson, Marwin Mosley, Bryan Bostick, Defendants.**

**No. CRIM. 98–264(RCL).**

United States District Court,
District of Columbia.

Oct. 11, 2000.

Cary Clennon, Washington, DC, for Defendant Bostick.

Pleasant S. Broadnax, Washington, DC, for Defendant Tommy Edelin.

James W. Rudasill, Jr., Washington, DC, for Defendant Tommy Edelin.

Richard K. Gilbert, Washington, DC, for Defendant Johnson.

Christopher Davis, Washington, DC, for Defendant Earl Edelin.

Shawn Moore, Federal Public Defender for D.C., Washington, DC, for Defendant Marbury.

Jensen E. Barber, Washington, DC, for Defendant Mosley, for Defendants.

William M. Sullivan, Asst. U.S. Atty., Washington, DC, for the Government.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

The remaining six defendants in this case are charged with the following: conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, fifty grams or more of cocaine base, and one kilogram or more of heroin; continuing criminal enterprise; conspiracy to participate in a racketeer influenced corrupt organization; first degree murder while armed; continuing criminal enterprise murder; assault with intent to murder while armed; assault with a dangerous weapon; use of a firearm; possession of a firearm during a crime of violence; distribution of five grams or more of cocaine base; possession with intent to distribute cocaine base; unlawful use of a communication facility; possession with intent to distribute one kilogram or more of heroin; and possession with intent to distribute five kilograms or more of cocaine. Additionally, all of the six defendants are charged with continuing criminal enterprise murder. The Attorney General has authorized seeking the death penalty against one defendant, Tommy Edelin. Although the other defendants are death penalty eligible, prosecutorial discretion has been exercised to not seek death for these defendants. The five non-capital defendants are: Earl Edelin, Shelton Marbury, Henry Johnson, Marwin Mosley, and Bryan Bostick.

### Joinder

Several of the defendants have raised the issue of misjoinder under Rule 8 of the Federal Rules of Criminal Procedure. Others have assumed *arguendo* that joinder of offenses and defendants is appropriate and have asked for severance under Rule 14 of the Federal Rules of Criminal Procedure. In either case, the Court believes it is expeditious to determine whether the indictment in this case includes a valid joinder of offenses and defendants. Rule 8 reads as follows:

"(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

"(b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count." FEDERAL RULES OF CRIMINAL PROCEDURE 8.

In this case, the offenses that are charged in the superceding indictment are based on the same alleged "act or transaction" or on parts of a common scheme or transactions. The conspiracy charge is a common thread that ties all of the defendants and charges together. *See United States v. Morales,* 868 F.2d 1562, 1568–69 (11th Cir.1989) ("Joinder of multiple defendants is proper whenever there is a 'common thread' between the actions charged against them."); *United States v. Saget,*

991 F.2d 702, 707 (11th Cir.1993). "Rule 8(b) ... makes clear that joinder of the defendants for trial is proper where the indictment charges multiple defendants with a single conspiracy and also charges some of the defendants with substantive counts arising out of the conspiracy." *United States v. Simon,* 839 F.2d 1461, 1472 (11th Cir.1988). Charges based on a "series of acts or transactions" connected together into a common scheme or plan are properly joined under Rule 8(b). *United States v. Brown,* 823 F.2d 591, 598 (D.C.Cir.1987) (quoting *United States v. Perry,* 731 F.2d 985, 990 (D.C.Cir.1984).) This "common thread" or "logical relationship" between the acts or transactions provides a valid basis for joinder in this case. *United States v. Spriggs,* 102 F.3d 1245, 1255 (D.C.Cir.1996), *cert. denied,* 522 U.S. 831, 118 S.Ct. 97, 139 L.Ed.2d 52 (1997).

Defendant Johnson recognizes in his Memorandum of Points and Authorities that joinder of defendants is proper on the face of the indictment. *Johnson Memorandum* at 5. The Court agrees that joinder of defendants is proper at this time. "The general rule is that defendants who are jointly indicted should be tried together, and this rule applies with particular force to conspiracy cases." *United States v. Walker,* 720 F.2d 1527, 1533 (11th Cir. 1983), *cert. denied* 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984); *United States v. Cassano,* 132 F.3d 646, 650–51 (11th Cir.1998).

■ Joinder of conspiracy charges and defendants is preferred in this Circuit and in other Circuits. "Joint trials are favored in RICO cases ... 'where ... the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve two defendants who are charged, *inter alia,* with participating in the same illegal acts.' " *United States v. Richardson,* 167 F.3d 621, 624 (D.C.Cir. 1999), *quoting United States v. Ford,* 870 F.2d 729, 731 (D.C.Cir.1989). "The preference for a joint trial of multiple defendants in conspiracy cases reflects the sound poli-

cy of joinder where charges may be proven with substantially the same evidence." *United States v. Aiken,* 76 F.Supp.2d 1346, 1352 (S.D.Fla.1999), *citing United States v. Dorsey,* 819 F.2d 1055, 1058 (11th Cir. 1987). The preference for joinder is even stronger in conspiracy cases. "Rarely, if ever, will it be improper for co-conspirators to be tried together." *United States v. Jackson,* 64 F.3d 1213, 1217 (8th Cir. 1995) (citations omitted).

Joint trials are preferred for a variety of reasons, including judicial efficiency and consistent verdicts. *Buchanan v. Kentucky,* 483 U.S. 402, 418, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987) ("Underlying the Commonwealth's interest in a joint trial is a related interest in promoting the reliability and consistency of its judicial process, an interest that may benefit the noncapital defendant as well. In joint trials, the jury obtains a more complete view of all the acts underlying the charges than would be possible in separate trials. From such a perspective, it may be able to arrive more reliably at its conclusions regarding the guilt or innocence of a particular defendant and to assign fairly the respective responsibilities of each defendant in sentencing.").

■ The Court recognizes that it has a continuing duty to monitor the appropriateness of joinder of counts and defendants. *Schaffer v. United States,* 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). The Court also recognizes that it must continue to be vigilant for prejudice arising under Rule 14 of the Federal Rules of Criminal Procedure. *Id.*

### Defendant Johnson's Motion to Sever Counts

Defendant Johnson makes the motion that the firearms counts and crimes of violence are misjoined. For the reasons stated above in the section regarding proper joinder under Rule 8 of the Federal Rules of Criminal Procedure, the Court disagrees with defendant Johnson. His

statements regarding misjoinder are conclusory, he provides no analysis or argument as to why the firearms counts and crimes of violence are not properly within the scope of the conspiracy charges.

## Severance

Defendants Earl Edelin, Shelton Marbury, Henry Johnson, Marwin Mosley, and Bryan Bostick have all requested severance of capital defendant Tommy Edelin. Defendant Tommy Edelin has in turn requested severance from the non-capital defendants. Defendant Mosley has requested the withdrawal of his Motion to Sever Co-defendant, but because Defendant Johnson has adopted Defendant Mosley's Motion to Sever, the Court will address the points made in that motion below. Although Rule 8 joinder is appropriate in this case, the Court must also consider whether the risk of prejudice stemming from a joint trial is so high as to warrant severance under Rule 14. Rule 14 provides the basis for the majority of the requests for severance by the defendants in this case. The relevant portion of Rule 14 of the Federal Rules of Criminal Procedure reads as follows:

> "If it appears that a defendant or the government is prejudiced by a joinder of offences or defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." FEDERAL RULES OF CRIMINAL PROCEDURE 14.

■ Although Rule 14 allows for severance of properly joined defendants, the defendant requesting the severance bears the heavy burden of showing that joinder would violate his constitutional fair trial rights. *United States v. Spitler*, 800 F.2d 1267, 1271 (4th Cir.1986), *United States v. Carpentier*, 689 F.2d 21, 27 (2d Cir.1982), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983). The Supreme Court has defined "prejudice" in this context to be a "serious risk that a joint trial would compromise a specific trail right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

■ While court must carefully evaluate the risk of prejudice in joint trials, there is no constitutional requirement that there be a guilt phase severance of properly joined defendants and offenses. *Zafiro*, 506 U.S. at 537, 113 S.Ct. 933; *United States v. Salameh*, 152 F.3d 88 (2nd Cir.1998). Trial courts must always be mindful of the competing interests at stake. *See United States v. Aiken*, 76 F.Supp.2d 1346 (S.D.Fla.1999) (recognizing the courts' duty to balance judicial economy and efficiency with the potential prejudice a defendant faces in a joint trial).

■ When severance is considered, it is entrusted to the sound discretion of the trial court. *U.S. v. Vaccaro*, 816 F.2d 443 (9th Cir.1987), *cert. denied*, 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987), *abrogated on other grounds*, *Huddleston v. U.S.*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). The defendant who is requesting severance must show that a joint trial would violate his fair trial rights; if there is no showing of prejudice, concerns of judicial economy will mandate a joint trial. *Vaccaro*, 816 F.2d at 449.

Trial courts are widely held to exercise broad discretion in making severance determinations. *Zafiro*, 506 U.S. at 538–39, 113 S.Ct. 933; *United States v. Brown*, 16 F.3d 423, 432 (D.C.Cir.1994). In *Zafiro*, the Supreme Court recognized not only that "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. at 538–39, 113 S.Ct. 933.

■ In order to alleviate the risk of prejudice, federal courts have used alternatives other than severance to provide

for fair trials. Severance is used if other methods of avoiding prejudice are inadequate. Severance is not warranted in every case where there is some risk of prejudice. "[T]he Constitution does not guarantee a trial free from the prejudice that inevitably accompanies any charge of heinous group crime; it demands only that the potential for transference of guilt be minimized to the extent possible under the circumstances . . . ." *United States v. Elliott,* 571 F.2d 880, 905 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). The burden is on the defendants for showing that these alternative methods for avoiding prejudice are not sufficient to ensure a fair trial. *United States v. Causey,* 185 F.3d 407, 416 (5th Cir.1999). The threatened prejudice must be a type which the trial court is unable to afford protection by other means. *See id.* Because there is a preference for joinder of offenses and defendants in a conspiracy trial, the court should look to other methods for reducing the risk of prejudice. *See Zafiro,* 506 U.S. at 539, 113 S.Ct. 933; *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).

■ One of the preferred methods for reducing the risk of prejudice is by instructing the jury on their duties and on the evidence. While all prejudice cannot be eliminated through the use of jury instructions, jurors are presumed to be able to follow the instructions of the court. "When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). Other courts have recognized the usefulness of limiting instructions in curing prejudice. *See United States v. Talley,* 108 F.3d 277, 280 (11th Cir.1997) ("limiting instructions often will suffice to cure any risk of prejudice."). Defendants must show that the appropri-

ate limiting instructions would fail to cure any potential prejudice asserted in their briefs. The defendant seeking severance must demonstrate a "specific and compelling prejudice that resulted in an unfair trial and such prejudice must be of a type against which the trial court was unable to afford protection." *United States v. Pena–Rodriguez,* 110 F.3d 1120, 1128 (5th Cir.), *cert. denied,* 522 U.S. 819, 118 S.Ct. 71, 139 L.Ed.2d 32 (1997); *see also Causey* 185 F.3d at 416. The defendants here have not shown that proper instruction of the jury would be insufficient to protect their trial rights.

Defendants argue that jury instructions would be insufficient to remove the risk of prejudice, but the Supreme Court has decided that jury instructions are presumed to be effective. *Richardson v. Marsh,* 481 U.S. at 206, 107 S.Ct. 1702 ("the almost invariable assumption of the law that jurors follow their instructions."). *See also United States v. West,* 877 F.2d 281, 287 (4th Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989). The Court in *Marsh* explained the rationale behind the presumption as follows: "The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process." *Marsh* 481 U.S. at 211, 107 S.Ct. 1702.

The Supreme Court revisited the curative powers of jury instructions more recently, in *Marshall v. Lonberger* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). "[T]he crucial assumption underlying the system of trial by jury is that juries will follow the instructions given them by the trial judge.. Were this not so, it would be pointless for a trial court to instruct a jury, and even more pointless for an appellate court to reverse a criminal conviction because a jury was improperly instructed." *Marshall v. Lonberger,* 459 U.S. 422, 428

n. 6, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). *Marshall v. Lonberger* also stands for the proposition that jurors are presumed to follow their instructions in capital cases. *See id.*

Although joinder of defendants and offenses is generally the preferred course, there are some indications that joinder in mega-trials is disfavored. *United States v. Gallo*, 668 F.Supp. 736, 749–53, 757 (E.D.N.Y.1987). While joinder may be disfavored where there are large numbers of defendants and highly complex charges, that is not the situation here. In this case, there are six co-defendants who were closely associated in two conspiracies, one to distribute narcotics, the other involving RICO. This case does not rise to the level of complexity that would necessitate severing the trials of the co-defendants.

Joint trials are generally favored because they promote efficiency. *Zafiro*, 506 U.S. at 537, 113 S.Ct. 933. On the other hand, this Court recognizes that sometimes it can be more efficient to have separate, smaller trials. In this case, however, given the number of witnesses that will testify as to the alleged conspiracy, the nature of the alleged conspiracy and the alleged participation of the defendants, severance would draw out the time needed for trials, it would unnecessarily endanger the safety of witnesses and it would complicate the issues to be presented at trial.

**Disparity of Evidence**

▇▇▇▇ Severance may also be appropriate in cases where there are large disparities in the amount of evidence being offered against each defendant. *See Zafiro*, 506 U.S. at 539, 113 S.Ct. 933 (recognizing that a risk of prejudice "might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a co-defendant"). The defendants claim that there is a gross disparity of evidence being offered against them. This Court does not recognize a large disparity in the evidence against the different defendants. The de-

fendants in this case are all charged with conspiracy to conduct illegal activities. Because of the conspiracy charges, it is necessary that the government provide evidence to prove, beyond a reasonable doubt, to the fact-finder that there was an affirmative agreement by the defendants to engage in criminal activity and that there was an affirmative act by each of the defendants in furtherance of the conspiracy. It would be unnecessarily cumulative and burdensome to have the government produce the same witnesses and evidence for multiple trials. In other cases, severance has been granted where the conspiracy charges were dismissed prior to trial, or in situations where the defendants were not charged under one indictment. *See United States v. Sherlock*, 962 F.2d 1349 (9th Cir.1989); *United States v. Nicely*, 922 F.2d 850 (D.C.Cir.1991). Neither situation applies in this case.

▇▇▇▇ The disparity in the alleged roles of the defendants is often cited as a reason for severance of defendants in conspiracy cases, but, as other courts have recognized, the nature of a conspiracy, or of any criminal trial, is that there are different quanta of evidence against various defendants. There will also be a disparity in the alleged roles of the defendants in a variety of criminal cases, most notably in drug distribution conspiracies where a kingpin will be more visible and culpable than a distributor. Severance is not appropriate merely because some co-conspirators were more active in the conspiracy, nor because some co-conspirators played a more central role. *Blumenthal v. United States*, 332 U.S. 539, 556–57, 68 S.Ct. 248, 92 L.Ed. 154 (1947); *United States v. Leach*, 613 F.2d 1295, 1299 (5th Cir.1980); *United States v. Nersesian*, 824 F.2d 1294, 1304 (2nd Cir. 1987); *United States v. Perholtz*, 657 F.Supp. 603 (D.D.C.1986); *United States v. Ianniello*, 621 F.Supp. 1455, 1477–78 (S.D.N.Y.1985), *aff'd*, 808 F.2d 84 (2d Cir. 1987), *cert. denied*, 483 U.S. 1006, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987) (disallowing severance requested on the grounds that

defendant played a minor role in a RICO conspiracy). More explicitly, severance has been held to be unnecessary in RICO prosecutions, even when all of the defendants are not charged in every count of the indictment *See United States v. Caporale*, 806 F.2d 1487, 1510 (11th Cir.1986), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 763 (1987).

■ The key to determining whether there should be a severance of defendants or offenses is whether or not the jury would be able to compartmentalize the evidence as it applies to different defendants and offenses. "In considering a severance motion, it has been said that the primary consideration is whether the jury could reasonably be expected to compartmentalize the evidence as it relates to the separate defendants." *United States v. Wright–Barker*, 784 F.2d 161, 175 (1986). *See United States v. Alexander*, 982 F.2d 262, 266 (8th Cir.1992) (holding that "prejudice exists where the jury was unable to 'compartmentalize the evidence' as it related to the separate defendants)." This case is not so complex that a jury could not compartmentalize the evidence presented to it. The Court intends to carefully instruct the jury as to different evidence and the jury's responsibility in determining the guilt or innocence of each of the different defendants on the basis of that evidence. It is a widely accepted rule of law that juries follow their instructions. *Marsh*, 481 U.S. at 211, 107 S.Ct. 1702. In this situation, with the careful attention of this Court and the vigilance of counsel, the evidence will be compartmentalized.

**Testimony of Co-defendant**

■ Rule 14 severance is often considered in cases where a codefendant's testimony is offered against another defendant. It is likely that the statements of the different defendants will be offered as evidence to prove the conspiracies. The vast majority of this evidence would be admissible in separate trials against the individual defendants as evidence of conspiracy even if the trials were severed. The Court will carefully weigh the probative versus prejudicial value of the evidence during trial; but there is no indication that severance is required to preserve the fair trial rights of the defendants. There is a strong preference for joinder in the federal system, and alternatives to severance often suffice to limit the risk of prejudice to defendants. *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933.

Earl Edelin makes the argument under that he should be allowed to sever his trial from that of Tommy Edelin because he needs the testimony of co-defendant Tommy Edelin. Defendant Earl Edelin must first make the *prima facie* showing required under the factors of *United States v. Ford*, 870 F.2d 729, 731 (D.C.Cir.1989). Under *Ford*, Earl Edelin must show that there is a bona fide need for the testimony, what the substance of the desired testimony will be, the exculpatory nature and effect of the testimony, and the likelihood that the co-defendant would in fact testify. *U.S. v. Ford*, 870 F.2d at 731. The Court must then determine the significance of the testimony in relation to the defendant's theory of the case, assess the extent of prejudice caused by the absence of the testimony, give weight to the timeliness of the motion, and consider the effects on judicial administration and economy. *Id.* Addressing each element of *U.S. v. Ford*, it appears that there is a bona fide need for the testimony, co-defendant Tommy Edelin has represented that he will testify, defendant Earl Edelin has disclosed that Tommy Edelin would deny that he solicited the murder of his father, and this testimony might be somewhat exculpatory for Earl Edelin. The prima facie burden of defendant Earl Edelin has been met aside from the burden of proving the likelihood that Tommy Edelin will testify.

Delving beyond the representation that Tommy Edelin will testify, it must be recognized that although co-defendant Tommy Edelin has represented that he will testify that he did not seek to have his

father murdered, the likelihood that he will actually testify must be weighed, not only upon the representation made by counsel for Earl Edelin that Tommy Edelin will testify, but also on the likelihood that Tommy Edelin would subject himself to cross-examination when he faces the death penalty, albeit in another trial. The Court cannot engage in flights of fancy where a defendant can force severance of his case by asserting that his co-defendant would testify on his behalf. The reality of the situation is very far from Earl Edelin's claims. In order for Tommy Edelin to testify at his father's trial, he would be subjecting himself to cross-examination. The likelihood that he would even consider doing so before his own case has come to a final judgment and all appeals have been exhausted is infinitesimally small. Even assuming that Tommy Edelin would testify, the Court rules that severance is not warranted when the proposed testimony of Tommy Edelin would be suspect, self-serving, and of potentially insignificant probative value.

 Trials cannot be severed solely on the grounds of proposed co-defendant testimony. "Joint trials play a vital role in the criminal justice system .... It would impair both the efficiency and the fairness of the criminal justice system to require, in all these cases of joint crimes where incriminating statements exist, that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interest of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit." *Richardson v. Marsh,* 481 U.S. at 209–10, 107 S.Ct. 1702.

Assuming that the prima facie case has been made for severance on the grounds of co-defendant testimony, the Court must evaluate the remaining *Ford* factors. *U.S. v. Ford,* 870 F.2d at 731. Severance would be denied on these grounds as well. The Court finds that the testimony is highly significant in relation to defendant Earl Edelin's proposed theory of the case. The extent of the prejudice caused by the absence of the testimony is harder to evaluate, but the Court will assume here that Tommy Edelin's testimony might be credible to a jury. The motion is timely, and weight is given accordingly. Finally, in addressing the last factor, that of judicial administration and economy, it becomes evident that the factors of *U.S. v. Ford* weigh in favor of not severing the defendants. The effects on judicial administration and economy would be severe. The safety of witnesses, in addition to the burden on the court and the attorneys of having a second trial that will last three to four months clearly indicate severance would not be desirable. The Court concludes that the balancing of potential prejudice to defendants and the factors discussed above does not require severance in this situation.

### Death qualified jury

 The non-capital defendants, aside from Defendant Mosley, have requested severance on the grounds of the potential bias of a death qualified jury. The Supreme Court of the United States has clearly held that a defendant in a capital case is not prejudiced by being tried before a death qualified jury. *Lockhart v. McCree,* 476 U.S. 162, 173, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). The Supreme Court has also established that the 6th and 14th Amendments to the Constitution are not violated by a trial of a non-capital defendant by a death qualified jury when the non-capital defendant's trial is properly joined his capital co-defendant's trial. *Buchanan v. Kentucky,* 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987). The Ninth Circuit Court of Appeals has held that a non-capital defendant who is improperly convicted to death by a death-

qualified jury has not been denied his constitutional rights by being tried during the guilt phase of trial before a death qualified jury. *Furman v. Wood*, 190 F.3d 1002 (9th Cir.1999).

It is true that the Supreme Court has not specifically examined the question that is brought before the Court today. There are 4 non-capital defendants asking for severance from one capital defendant, and the capital defendant has also requested severance. This case is distinguishable from *McCree* because there are non-capital defendants involved; it is also distinguishable from *Buchanan v. Kentucky*, because the non-capital defendant in *Buchanan* did not request severance prior to trial. *Buchanan v. Kentucky*, 483 U.S. at 407, 107 S.Ct. 2906. *Buchanan* provides some guidance in this situation, however, because of the similarities between this case and *Buchanan*. The Ninth Circuit in *Furman* has applied the analysis of *McCree* and *Buchanan* to the use of a death qualified jury for a non-capital defendant, albeit in somewhat different circumstances. In *Furman* the Ninth Circuit found that guilt phase determinations by a death qualified jury are constitutionally sound. *See Furman*, 190 F.3d at 1003.

In *Buchanan*, though the appellant never requested severance, the Supreme Court held that the death qualified jury did not violate the petitioners rights under the 6th and 14th Amendments to an impartial jury selected from a representative cross section of the community. *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987). It is important for the purposes of this case to recognize that while the petitioner had never requested severance, he did make several pretrial requests for a non-death qualified jury. *Id.* at 407–08, 107 S.Ct. 2906. Although the crime in *Buchanan* was a single, contained incident with two defendants, less intricate and complex than the crimes charged in this case, this conspiracy is also a case where the crimes arose out of the same indictment, the same

course of conduct, and the same actors. Joinder is entirely appropriate in this case, indeed, severance would be disfavored, and the arguments of the defendants in their pleadings do not rise to the level where severance should be granted, even where the non-capital defendants will be tried before a death qualified jury. While a district court may sever defendants, there is no requirement that this court do so, and it is also clear that the trial rights of the defendants here would not be violated if a death-qualified jury were to sit and hear evidence on the charges against them.

The Ninth Circuit has faced the issue of whether a non-capital defendant was prejudiced by trial before a death qualified jury, and that Circuit has found that he was not significantly prejudiced. *Furman v. Wood* 190 F.3d 1002 (9th Cir.1999). The *Furman* court considered *McCree* and *Buchanan* and decided that those cases implicitly recognize that guilt phase trials of non-capital defendants by a death qualified jury are valid. Though it originally arose under state law grounds, *Furman* was decided on the basis of Supreme Court precedent. *Furman*, 190 F.3d at 1004. The defendant was tried before a death qualified jury even though he was not legitimately subject to the death penalty. *Id.* Despite the unnecessary use of a death qualified jury, the Ninth Circuit held that the use of a death qualified jury during the guilt phase of the trial did not violate Furman's constitutional right to a fair and impartial jury. *Id.* at 1005.

The *Furman* court, in evaluating *Buchanan* and *McCree*, said: "*Buchanan* tracks *McCree*'s analysis. It holds that death qualification does not violate the rights of a non-capital defendant tried jointly with a capital defendant.... [T]he Court rejected a partiality argument, noting that *McCree* had found that to the extent that death qualification affects deliberations, it does so at the penalty phase, not at the guilt phase, where jury discretion is closely channeled. Death qualifica-

tion therefore does not affect the rights of a non-capital defendant." *Furman* at 1005, *referencing Buchanan* at 420, 107 S.Ct. 2906.

It is not difficult to extend the reasoning of *Buchanan* and *Furman* to the instant case. A pragmatic approach is easily discernible in the writing of the Court. "Where ... one of the joined defendants is a capital defendant and the capital-sentencing scheme requires the use of the same jury for the guilt and penalty phases of the capital defendant's trial, the interest in this scheme, which the Court recognized as significant in *McCree* ... coupled with the [state's] interest in a joint trial, argues strongly in favor of permitting 'death qualification' of the jury...." *Buchanan* at 420, 107 S.Ct. 2906. Joint trials between capital and non-capital defendants were upheld as valid, though certainly subject to the sound discretion of the trial court. *United States v. Lane*, 474 U.S. 438, 449 n. 12, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986).

The Supreme Court has addressed the concerns of the non-capital defendants regarding the conviction proneness of death qualified juries. "[T]he particular concern about the possible effect of an 'imbalanced jury' is not present with respect to the guilt and sentencing phases of a noncapital defendant.... For, at the guilt phase, the jury's discretion traditionally is more channeled than at a capital-sentencing proceeding, and, at the penalty phase, the jury's sentence is limited to specific statutory sentences and is subject to review by the judge." *Buchanan* 483 U.S. at 419–20, 107 S.Ct. 2906 (citations omitted).

Although the concern of the defendants about trying capital and non-capital defendants together is not totally off the mark, there should be careful consideration of the different elements of the case in order to determine whether or not severance is warranted. "[E]ach case must be decided on its unique facts and circumstances.... the United States Supreme Court has not adopted a bright line test requiring severance each time a capital and non-capital defendant or defendants are indicted together." *United States v. Aiken*, 76 F.Supp.2d at 1354 n. 2. This determination, however, should be made with the understanding that there is a preference for joint trials where there is no serious risk of prejudice. "The United States Supreme Court has not developed a bright line test mandating severance whenever capital and non-capital defendants are charged together, but has recognized a strong preference for trying defendants who are indicted together in joint trials." *See Zafiro*, 506 U.S. at 537, 113 S.Ct. 933 ("There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials 'play a vital role in the criminal justice system.'") (citation omitted).

The social science referenced by the defendants indicates that there are differences between death qualified juries and those juries that have not been death qualified. *See declarations of White, Penrod, and Bruck*. However compelling the studies may appear, they are less important in light of the assumptions made by the Supreme Court in *McCree* and *Buchanan*. The Supreme Court in *McCree* and in *Buchanan* assumed the validity of the studies before it and still ruled that the death qualified jury was a valid and constitutional instrument of the courts. *McCree*, 476 U.S. at 173, 106 S.Ct. 1758; *Buchanan* 483 U.S. at 415 n. 16, 107 S.Ct. 2906. The Supreme Court was not willing to find in *McCree* and *Buchanan* that the prejudice associated with a death qualified jury was sufficient to mandate another system of selecting juries; it is not the place of this Court to disagree. The defendants petitioning this Court for severance recognize that a death qualified jury is valid for a capital defendant; however, they do not address why a capital defendant should be afforded less constitutional protection than a non-capital defendant when the state has a valid interest a joint trial and a single jury.

In *Lockhart v. McCree* 476 U.S. 162, 176, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), the Supreme Court held that a capital defendant has no constitutional right to a guilt phase jury that is not death-qualified. The defendants err, however, in drawing the conclusion that a non-capital defendant is entitled to *more* constitutional protection than a capital defendant. If a death-qualified jury is unfit for a non-capital defendant, it most certainly would be inappropriate for a capital defendant. The Supreme Court has clearly indicated that a death qualified jury is valid in a variety of situations, see *supra* discussion of *McCree* and *Buchanan*. It would be contrary to the rulings of the Supreme Court for this Court to hold that severance is warranted in this case.

The Supreme Court in *Wainwright v. Witt* carefully weighed the factors that should be used in death qualifying a jury. *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). The Court adopted the standard from *Adams v. Texas,* excusing jurors where the "juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Witt,* 469 U.S. at 412, 105 S.Ct. 844, *quoting Adams v. Texas,* 448 U.S. 38, 45, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). In addition, the *Witt* Court explicitly stated the end result hoped for. "Here, as elsewhere, the quest is for jurors who will conscientiously apply the law and find the facts. That is what an 'impartial' jury consists of, and the Court does not think, simply because a defendant is being tried for a capital crime, that he is entitled to a legal presumption or standard that allows jurors to be seated who quite likely will be biased in his favor." *Witt* at 423, 105 S.Ct. 844.

Defendants' fears of a death qualified jury are rebutted by Supreme Court precedent. "Death qualification," unlike the "wholesale exclusion of blacks, women, or Mexican–Americans from jury service, is carefully designed to serve the State's conceded legitimate interest in obtaining a single jury that can properly and impartially apply the law to the facts of the case at both the guilt and sentencing phases of a capital trial." *McCree,* 476 U.S. at 176, 106 S.Ct. 1758. Here the government has a legitimate interest in a joint trial and in having a death qualified jury, therefore, the defendants' arguments do not warrant severance.

Although the White affidavit suggests that a death qualified jury might be more conviction prone, as well as pro-prosecution, the affidavit is conclusory in its determinations. *See Defendant Bostick's Supplement to Motion for Severance of Defendants and Relief from Prejudicial Joinder.* Several studies have examined whether death-qualified juries are biased in favor of the prosecution, but case law from the Supreme Court and from other federal courts controls on this issue. The defendants listed several federal court cases where severance had been granted, but in most of those cases, there was no published opinion on the issue of severance and no indication of why severance was granted. In this case, there are many reasons why severance is disfavored. One of these is the preference for joinder in conspiracy cases, another is the burden on witnesses. Although the burden on witnesses generally falls within the "judicial economy" category, it should be emphasized that in this case there is an ongoing danger to the witnesses involved, and that they would be further endangered and burdened were the court to grant severance.

Another option, and indeed, one that has been requested in this case and discussed in at least one other federal district court case, is to empanel two juries to sit concurrently in the guilt determination. *United States v. Aiken,* 76 F.Supp.2d 1346, 1359 n.11 (S.D.Fla.1999). One would be death-qualified and the other would not. Unfortunately, the physical limitations of this courthouse, and the safety concerns that are an important concern in a large drug

conspiracy case such as this one, mandate that the court not empanel two juries to hear this case.

The concerns of the defendants regarding a death-qualified jury must be evaluated in a constitutional context to determine whether there must be severance in order to protect their individual trial rights. Precedent establishes that there is no mandate from the Supreme Court that defendants in similar situations be severed from one another. Furthermore, it is within the discretion of the trial judge even if there would be some kind of a violation of the rights of the defendants as to what kind of remedy should be fashioned. *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933. In this situation the Court will rely on the ability of the jury to follow the instructions of this Court when limiting and other instructions are given.

**Composition of the jury**

 Although the capital defendant, Tommy Edelin, will have more peremptory challenges available to him than the other defendants, this will not result in a jury that fails to meet the constitutional requirements for a fair and impartial jury. Although the non-capital defendants may not be able to shape the jury to their liking, there is no constitutional guarantee that a criminal defendant have the right to fashion a jury to his or her liking. *See Witt* at 423, 105 S.Ct. 844.

**Separate Juries**

Several of the defendants have proposed separate juries, one death qualified, the other not death qualified. Defendant Tommy Edelin has proposed that he face a non-death qualified jury for the guilt phase and a separate sentencing jury that is death qualified. The Supreme Court has ruled that the use of separate juries is not preferred, for either capital or non-capital defendants. *See Buchanan*, 483 U.S. at 418, 107 S.Ct. 2906 (single jury has better perspective on issues of guilt and innocence and sentencing, allows jury "to arrive more reliably at its conclusions re-

garding the guilt or innocence of a particular defendant [and also] to assign fairly the respective responsibilities of each defendant in the sentencing."); *see also McCree*, 476 U.S. at 181, 106 S.Ct. 1758. *Cf. United States v. Tipton*, 90 F.3d 861, 892 (4th Cir.1996) ("The same considerations of efficiency and fairness to the Government (and possibly the accused as well) that militate in favor of joint trials of jointly—tried defendants in the guilt phase, must remain generally in play at the penalty phase").

A separate, non-death qualified jury for the non-capital defendants has also been rejected. "Given the significant interest in having one jury for both the guilt and penalty phases of a joint trial, there is no reason to treat in any detail the alternatives to this procedure that the petitioner proposes.... Whatever might be the proper focus of petitioner's demand for relief, the alternatives basically require the Commonwealth either to abandon the 'death qualification' of juries at the guilt phase of a joint trial or to empanel an additional jury. We decline to place either burden on the Commonwealth." *Buchanan*, 483 U.S. at 419, n. 18, 107 S.Ct. 2906; *see also McCree*, 476 U.S. at 181, 106 S.Ct. 1758.

Defendant Tommy Edelin has asked for a separate jury to hear his sentencing based on the 8th Amendment's particularized sentencing requirements. Defendant Tommy Edelin's sentencing will be separate from the sentencing of his co-defendants because he faces the death penalty. The separate penalty phase for defendant Tommy Edelin will provide sufficient protections and individualized sentencing to protect his constitutional rights in that regard.

**Mutually Antagonistic Defenses**

 The defendants also argue that they have mutually antagonistic defenses and that this provides additional grounds for severance. Supreme Court precedent debunks this notion. "Mutually antagonis-

tic defenses are not prejudicial per se. Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro,* 506 U.S. at 538–39, 113 S.Ct. 933 (*citing Lane,* 474 U.S. at 449 n. 12, 106 S.Ct. 725). In *Zafiro,* the Supreme Court held that Rule 14 severance should only be granted when there is a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro* 506 U.S. at 539, 113 S.Ct. 933. "[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Id.* at 540, 113 S.Ct. 933. The *Zafiro* Court further held that any prejudice resulting from the mutually antagonistic defenses could be cured with proper instructions. *Aiken,* 76 F.Supp.2d at 1357 & n. 10; *Zafiro,* 506 U.S. at 540, 113 S.Ct. 933. Even though mutually antagonistic defenses "may be so prejudicial in some circumstances as to mandate severance ... the courts have reversed relatively few convictions for failure to grant a severance on grounds of mutually antagonistic or irreconcilable defenses." *Zafiro,* 506 U.S. at 538, 113 S.Ct. 933 (citations omitted).

The risk of mutually antagonistic defenses is that the defendants might in effect "prosecute" each other, thus relieving the government of its burden of proof. "[t]he primary danger that the rule seeks to avoid is a defendant faced with two prosecutors—the government and his co-defendant" *U.S. v. Sherlock,* 962 F.2d 1349, 1363 (1989). This is plainly not the case here. There is no requirement that the defendants testify regarding the silence of their co-defendants, nor is there a showing by any of the defendants that they will seek to prove the guilt of one of their co-defendants in order to prove their own innocence.

Earl Edelin makes the argument that he and the other defendants have mutually antagonistic defenses but does not give any reason why the other defendants would attack his claim of innocence. He claims that the defendants will "go after each other" but does not explain why Earl Edelin will be a target for his co-defendants. If the court were to take the arguments of Earl Edelin, *any* conspiracy trial would have to be severed. This is obviously not what is required to ensure a fair trial for the defendants. The test for severance is whether "the defendants present conflicting and irreconcilable defenses and there is a danger that the jury will unjustifiably infer that the conflict alone demonstrates that both are guilty." *U.S. v. Wright,* 783 F.2d 1091, 1094 (D.C.Cir. 1986) (*quoting Rhone v. United States,* 365 F.2d 980, 981 (D.C.Cir.1966).) In fact, the doctrine of irreconcilable defenses (mutually antagonistic defenses) is inapplicable where there is "independent evidence of each defendant's guilt." *United States v. Leonard,* 494 F.2d 955, 966 (D.C.Cir.1974). Moreover, it is not enough to show the "presence of some hostility among co-defendants," or that the co-defendant strategies are generally antagonistic. *United States v. Gilliam,* 167 F.3d 628, 635 (D.C.Cir.1999); *United States v. Brown,* 16 F.3d 423, 427 (D.C.Cir.1994).

### Conclusion

While it is true that no case precludes severance of a capital and a non-capital defendant, it is also correct to recognize that the Federal Rules and the majority of the case law in conspiracy cases supports joinder of defendants. In a case like this one, where there are allegations of an ongoing, violent and extensive conspiracy, joinder is appropriate under the Federal Rules, and in the absence of some showing of a serious risk that a joint trial would deprive the defendants of their constitutionally guaranteed trial rights, the Mo-

tions to Sever will be denied in a separate order issued this date.