UNITED STATES of America,

v.

Kevin GRAY Rodney L. Moore John Raynor Frank Howard Bryan Bostick Derrick Moore Roy Johnson Kenneth Simmons Wilford Oliver Calvin Smith Larry Wilkerson Timothy Handy Lionel Nunn Ronald Alfred James Alfred Franklin Seegers and Deon Oliver Defendants.

No. CR. 00–157(RCL).

United States District Court, District of Columbia.

Oct. 5, 2001.

Timothy J. Heaphy, Assistant United States Attorney, Matthew G. Olsen, Assistant United States Attorney, Washington, DC, for Government.

Francis D. Carter, Washington, DC (counsel for Kevin Gray), Barry Coburn, Washington, DC (counsel for Rodney Moore), Steve McCool, Mallon and McCool, LLC, Baltimore, MD (counsel for Rodney Moore), Cary Clennon, Washington, DC (counsel for Bryan Bostick), Diane M.B. Savage, Research Triangle Park, NC (counsel for Bryan Bostick), Frederick J. Sullivan, McCarthy and Sullivan, Bowie, MD (counsel for Roy Johnson), Alan b. Soschin, Washington, DC (counsel for Roy Johnson), G. Godwin Oyewole, Washington, DC (counsel for John Raynor), Tom Saunders, Baltimore, MD (counsel for John Raynor), Patrick Donahue, Annapolis, MD (counsel for Frank Howard), Joe McCarthy, Alexandria, VA (counsel for Frank Howard), Fred Jones, Washington, DC (counsel for Derrick Moore), Mitchell Baer, Washington, DC (counsel for Kenneth Simmons), Jonathan Rubens, Washington, DC (counsel for Calvin Smith), Michael Lasley, Washington, DC (counsel for Timothy Handy), John Carney, Carney and Carney, Washington, DC (counsel for Calvin Smith), Sebastian Graber, Wolftown, VA (counsel for Larry Wilkerson), Steven D. Rosenfield, Charlottesville, VA (counsel for Larry Wilkerson), Veronice A. Holt, Washington, DC (counsel for Lionel Nunn), David Carey Woll, Wheaton, MD (counsel for James Alfred), Mary Elizabeth Davis, Washington, DC (counsel for James Alfred), Adgis O'Bryant, Washington, DC (counsel for Timothy Handy), Frank Salvato, Alexandria, VA (counsel for Ronald Alfred), Idus Daniel, Daniel and Jamison, LLP, Washington, DC (counsel for Ronald Alfred), Manuel Retureta, Washington, DC (counsel for Franklin Seegers), Jon Norris, Washington, DC (counsel for Franklin Seegers), Kenneth D. Auerback, Silver Spring, MD (counsel for Deon Oliver), for Defendants.

## MEMORANDUM OPINION AND ORDER

LAMBERTH, District Judge.

Now before the Court is the Government's Proposed Order of Trial, defendant Nunn's Objections to Joinder and Motion for Severance, defendant Calvin Smith's Motions for Severance and Misjoinder of Offenses, defendant Timothy Handy's Motion to Sever Defendants and Counts, defendant Gray's Response to the Government's Severance Motion, defendant Franklin Seegers' Motion for Relief from Prejudicial Joinder, defendant Frank Howard's Motion for Severance, defendant Larry Wilkerson's Objection to Joinder and Motion for Severance, defendant John Raynor's Motion for Severance of Defendants, defendant James Alfred's Motion for Severance, defendant Rodney Moore's Motion for Severance of Defendants, defendant Rodney Moore's Supplemental Memorandum Concerning Severance of Defendants, the Government's Response to Defendants' Motions for Relief from Improper Joinder and for Severance, defendant Gray's Reply to Government's Response to Defendants, and defendant Timothy Handy's Reply to Government's Response to Defendants' Motions for Relief from Improper Joinder and for Severance. Upon consideration of the motions, the hearing before this Court on September 21, 2001, the relevant analysis of the decisions of state and federal courts, and the record of this case, the Court hereby DENIES the defendants' motions for severance of defendants, DENIES the defendants' motions for relief from improper joinder, DENIES the defendants' motions for misjoinder of offenses, DENIES the defendants' motions for severance of counts, GRANTS the Government's Proposed Order of Trial, and ORDERS that the trial of defendants Kevin L. Gray, Rodney L. Moore, John Raynor, Frank Howard, Calvin A. Smith, Timothy Handy, and Lionel Nunn shall be severed from the trial of defendants Bryan Bostick, Derrick Moore, Roy Johnson, Kenneth Simmons, Larry Wilkerson, Ronald Alfred, James Alfred, Franklin Seegers, Wilford Oliver [1], and Deon Oliver.

## I Background

The defendants in this case are charged in a 158–count Superseding Indictment. All seventeen defendants are charged in count one, Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms of More of Cocaine, Fifty Grams or More of Cocaine Base and One Kilogram or More of Heroin, and Marijuana, and count three, Conspiracy to Participate in a Racketeer Influenced Corrupt Organization. At least one but not all defendants are also charged with the following: continuing criminal enterprise; first degree murder while armed and aiding and abetting; continuing criminal enterprise murder and aiding and abetting; first degree felony murder while armed and aiding and abetting; assault with intent to murder while armed and aiding and abetting; tampering with a witness or informant by killing; violent crime in aid of racketeering activity and aiding and abetting; use of interstate commerce facilities in the commission of murder-for-hire; distribution of cocaine base and heroin and aiding and abetting; unlawful possession with intent to distribute cocaine base, cocaine, and heroin, and aiding and abetting; illegal use of a firearm; and unlawful use of a communication facility. The defendants are alleged to have caused the deaths of thirty-one individuals: Alvin Henson, Anthony Dent, Darrell Henson, Marvin Goodman, Christopher Burton, Scott Downing, Henry Lloyd, Aaron Jackson, Eric Moore, Co-

---

1. Defendant Wilford Oliver has not yet been apprehended.

rey Royster, Andrew Robinson, Ronald Powell, Dwayne Valentine, Joseph Thomas, Marco Smith, Ricardo Bailey, Garlan Baskerville, Joseph Jones, Diane Luther, Ervon Clyburn, Richard Simmons, Demetrius Green, Rodney Faison, Roy Cobb, Jaime Pereira, Ricky Fletcher, Carlos Cardoza, William Floyd, Thomas Walker, Anthony Watkins, and Derrick Edwards. In addition, the defendants are alleged to have committed eleven attempted murders.

The Attorney General has authorized seeking the death penalty against two defendants, Kevin Gray and Rodney Moore. Although there are other defendants who are death-eligible, the Government is seeking the death penalty against only two of the seventeen defendants.

Virtually all parties recognize that the seventeen defendants must be severed in some fashion; the configuration of the severance, however, is in dispute. On July 26, 2001, the Government filed a Proposed Order of Trial with the Government's suggested configuration. Defendants thereafter filed responses to the Government's Proposal, the Government filed a reply to the responses, and several defendants filed responses to the reply. In the Government's original proposal, the Government suggests a first trial of the two death-penalty defendants, Gray and Moore, and five non-death penalty defendants-Raynor, Howard, Smith, Handy, and Nunn. The Government suggests a second trial for the nine remaining defendants-Bostick, Johnson, Wilford Oliver, Deon Oliver, Wilkerson, Ronald Alfred, James Alfred, and Seegers.

## II   Joinder of Defendants

### 1.   Proper Joinder of Defendants Under Rule 8(b)

Joinder of defendants in this case is governed by Rule 8(b) of the Federal Rules of Criminal Procedure, which reads:

(b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

■ Charges against defendants are properly joined under Rule 8(b) when they are based on a "series of acts or transactions" that are part of a common scheme or plan. *United States v. Brown,* 823 F.2d 591, 598 (D.C.Cir.1987) (quoting *United States v. Perry,* 731 F.2d 985, 990 (D.C.Cir. 1984)). Furthermore, joint trials are the *preferred* method when multiple defendants are connected by a single alleged conspiracy. *See, e.g., United States v. Richardson,* 167 F.3d 621, 624 (D.C.Cir. 1999) ("Joint trials are favored in RICO cases ... 'where ... the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve two defendants who are charged, *inter alia,* with participating in the same illegal acts." ' (quoting *United States v. Ford,* 870 F.2d 729, 731 (D.C.Cir. 1989)); *United States v. Walker,* 720 F.2d 1527, 1533 (11th Cir.1983), *cert. denied,* 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984) ("The general rule is that defendants who are jointly indicted should be tried together, and this rule applies with particular force to conspiracy cases."); *United States v. Edelin,* 118 F.Supp.2d 36, 40 (D.D.C.2000) ("Joinder of conspiracy charges and defendants is preferred in this Circuit and in other Circuits."). Joint trials are generally preferred in order to, among other reasons, preserve judicial resources, produce consistent verdicts and

minimize the burden on jurors, witnesses, defendants, and attorneys. *See Buchanan v. Kentucky*, 483 U.S. 402, 418, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987); *Edelin*, 118 F.Supp.2d at 40.

## 2. Severance of Defendants Under Rule 14

■ Joinder will not, however, always be proper. Rule 14 of the Federal Rules of Criminal Procedure governs when a trial judge has discretion to sever defendants:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendant or provide whatever other relief justice requires.

The Supreme Court has defined "prejudice" in this context to be a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), *quoted in United States v. Edelin*, 118 F.Supp.2d 36, 41 (D.D.C.2000). Thus, the primary element that this Court must examine when determining whether severance would be appropriate is whether joinder would result in a violation of the constitutional fair trial rights of any defendant. *United States v. Spitler*, 800 F.2d 1267, 1271 (4th Cir.1986); *Edelin*, 118 F.Supp.2d at 41 (when moving for severance, defendant bears "heavy burden" of showing prejudice). When interests of judicial economy are weighed, the charges and defendants are linked by an alleged overarching conspiracy, and there is no finding of prejudice, concerns of judicial economy

will mandate a joint trial. *See United States v. Vaccaro*, 816 F.2d 443 (9th Cir. 1987), *cert. denied*, 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987), *abrogated on other grounds*, *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

Although the concerns of judicial efficiency are important, the trial judge must be careful to examine any potentially prejudicial effects of joinder against each defendant. *United States v. Applewhite*, 72 F.3d 140, 144 (D.C.Cir.1995) (per curiam) (trial court must balance interest of judicial efficiency against risk of prejudice to defendant). When a defendant claims that joinder will result in prejudice, the trial judge is entrusted with the discretion to determine whether prejudice exists, and the appropriate remedy for any prejudice that is found. *United States v. Lane*, 474 U.S. 438, 449 n. 12, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) (Rule 14 gives trial judge discretion to determine whether prejudice from joinder of offenses or defendants warrants severance; appellate court will review on "abuse of discretion" standard); *United States v. Clark*, 184 F.3d 858, 866 (D.C.Cir.1999) (applying "abuse of discretion" standard to denial of severance). Not only must the trial judge carefully examine the defendants' claims of improper joinder at the outset of the proceedings, the trial judge has a "continuing duty to monitor the appropriateness of joinder of counts and defendants" and the possibility of prejudice against any defendant. *United States v. Edelin*, 118 F.Supp.2d 36, 40 (D.D.C.2000) (citing *Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960)).

## 3. Remedies for Improper Joinder

If there will be undue prejudice resulting from joinder, the trial judge has broad discretion to determine the remedy. The

Supreme Court has previously held that "Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States*, 506 U.S. 534, 538–39, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), *cited in United States v. Edelin*, 118 F.Supp.2d 36, 41 (D.D.C.2000). When there has been a sufficient showing of prejudice, the trial court may fashion an appropriate remedy.

■ The most common remedy, and the one that has been demanded by the majority of the defendants in the instant case, is severance from other defendants. Severance is a proper remedy only when the defendant has met the "heavy burden" of showing that joinder would violate his constitutional rights. *United States v. Edelin*, 118 F.Supp.2d 36, 41 (D.D.C.2000) (citing *United States v. Spitler*, 800 F.2d 1267, 1271 (4th Cir.1986)). The defendant must show that the threatened prejudice is of a type that requires *severance*, and no less intrusive alternative. *Edelin*, 118 F.Supp.2d at 42 (citing *United States v. Causey*, 185 F.3d 407, 416 (5th Cir.1999)).

Courts have the discretion to grant less extreme alternatives that may alleviate prejudice but not create an increased burden on the judicial system, such as additional jury instructions or separate juries. "When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), *cited in Edelin*, 118 F.Supp.2d at 42. Curative instructions are the preferred method of preventing prejudice to defendants; to assert severance over curative jury instructions, the defendant must show that jury instructions would be inadequate to cure any potential prejudice. *Edelin*, 118 F.Supp.2d at 42.

Another alternative that has been chosen by some courts is to empanel two juries-one that is death-qualified for the capital defendants, and another that is not death-qualified for the non-capital defendants. *See United States v. Hayes*, 676 F.2d 1359 (11th Cir.1982) (upholding the use of two juries as consistent with due process). This remedy is urged upon the Court by defendant Howard. *See* Def. Frank Howard's Mot. for Severance at 4. Empaneling two juries is, however, inappropriate in this case. Although courts in this Circuit have recognized that a two-jury trial may comport with the requirements of due process, *United States v. Lewis*, 716 F.2d 16 (1983), there are also recognized risks and dangers that attend a two-jury trial. In *Lewis*, the United States Court of Appeals for the District of Columbia upheld the trial judge's decision to conduct a dual-jury trial, but noted that

> "There are too many opportunities for reversible error to take place . . . If it is to be used at all, it should be used in relatively uncomplicated situations . . ." That the dual jury procedure increases these risks [of reversible error and prejudice] is beyond dispute.

*Lewis*, 716 F.2d at 19, 23 (quoting *State v. Corsi*, 86 N.J. 172, 430 A.2d 210 (1981)). The instant case is highly complicated, and empaneling two juries would exponentially increase the possibility for reversible error or prejudice to defendants.

4. Specific Circumstances that Warrant Severance

a. Limitations of the Court

■ Most often, severance of defendants will be required to protect the rights of defendants against undue prejudice resulting from joinder. In other situations, severance may be required, or at least the

argument for severance will be bolstered, by the physical limitations of the courthouse and the logistical difficulties of attempting to conduct a complex multi-defendant trial.

In the present instance, both the protection of the rights of the defendants and the physical limitations of the courthouse will incline this Court toward severance of defendants. *See United States v. Edelin,* 118 F.Supp.2d 36, 43 (2000) (citing *United States v. Gallo,* 668 F.Supp. 736, 749–53, 757 (E.D.N.Y.1987). Because of the "mega-trial" nature of this case, virtually all parties have agreed that there must be severance of some defendants. *See* Government Proposed Order of Trial at 2, Def. Franklin Seegers' Mot. for Relief from Prejudicial Joinder at 1, Def. Frank Howard's Mot. for Severance at 3, Def. Kevin Gray's Resp. to the Government Severance Mot. at 1, Government's Resp. to Defs. Mots. for Relief from Improper Joinder and for Severance at 2. Despite general agreement that there must be some form of severance, a more detailed analysis of the severance issues is warranted here for several reasons. First, not all defendants agree with severance. *See* Def. Gray's Reply to Government's Resp. to Defendants' Motions for Relief from Improper Joinder and for Severance at 3 (suggesting the use of the ceremonial courtroom to try all seventeen defendants together). Second, the issue of *how* the defendants should be severed is hotly contested. *See, e.g.,* Government Proposed Order of Trial, Def. Larry Wilkerson's Objection to Joinder and Mot. for Severance, Def. Gray's Resp. to the Government Severance Mot., Def. Rodney Moore's Mot. for Severance of Defs., Def. Timothy Handy's Mot. to Sever Defs. and Counts. Lastly, the trial court judge has a continuing duty, despite any agreement or disagreement among parties, to monitor the appropriateness of joinder and the possibility of any prejudice to defendants. *See Schaffer v. United States,* 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960)

In *United States v. Gallo,* 668 F.Supp. 736 (E.D.N.Y.1987), the United States District Court for the Eastern District of New York faced a similar situation when attempting to try a 16–defendant prosecution on a 22–count indictment. That court decided to split the defendants into seven different trials, despite the strong traditional assumption in favor of joint trials. *Id.* at 753. This Court is in accord with the finding of the *Gallo* court that multidefendant "mega-trials" may warrant some severance, but the instant case is factually distinguishable from *Gallo* and will require only severance into two different trials.

The *Gallo* court addressed the possibility of prejudicial joinder of the defendants, deriving from

> the number of defendants and the number of counts, the complexity of the indictment, estimated length of the trial, disparities in the amount or type of proof offered against the defendants, disparities in the degrees of involvement by defendants in the overall scheme, possible conflict between various defense theories or trial strategies; and, especially, prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant.

*Gallo,* 668 F.Supp. at 749. After weighing the potential prejudice against defendants, the court decided that the dispositive factor counseling severance was judicial efficiency. *Id.* at 753 ("[T]he prejudices to the defendants are not clearly dispositive . . ., we might be reluctant to grant such severances on Rule 14 alone. . . . [W]e question the traditional assumption that denial of severance . . . promotes efficiency."). Many of the factors that counseled

against complete joinder of defendants are also persuasive in the instant case.

First, there is hardship on the administrative structure of the Court-the absence of any "one juror, one defendant, one defense attorney, one prosecutor" can thwart the progress of the trial. *Gallo*, 668 F.Supp. at 754. With seventeen defendants, their attorneys, the attorneys for the Government, the marshals, the trial judge, the court reporter, the courtroom clerk, and other assorted personnel who must be involved on a daily basis with the trial, the coordination of all schedules would be an enormous task. Second, there is hardship on jurors who must leave the normal routines of life for extended periods of time. Even under the best circumstances, this Court anticipates that a trial of all seventeen defendants would extend beyond six months, and possibly closer to a year. With time included for jury selection and any possible penalty phase of the trial, the jurors could be required to serve for an extremely extended amount of time; this Court will certainly make efforts to ensure that jurors' lives are not overly disrupted, and that the length of the trial will disqualify as few jurors as possible. Third, there may be hardship on defendants, who may be unable to find counsel to represent them for such extended periods of time. Finally, the trial judge must bear up under the "grinding tension" of prolonged criminal trials, and must put his entire docket virtually on hold for the duration of the trial. *Id.* at 755. The complexity of the instant case, with seventeen defendants and a 158–count indictment, dwarfs the sixteen defendant, 22–count indictment faced by the *Gallo* court. Just as severance was necessary to ensure the proper administration of justice in *Gallo*, it is required here.

The remedy granted in *Gallo*, however, is not warranted in the instant case. In *Gallo*, three defendants were not charged in the RICO conspiracy but only with substantive counts, five defendants were not alleged to have been members of the mob "family" on trial, one defendant was named only on the RICO count but none of the substantive counts. *Gallo*, 668 F.Supp. at 745–46. In the present case, *all* defendants are indicted in both the RICO conspiracy and the conspiracy to distribute drugs. Defendants are, therefore, "alleged to have participated in the same act or transaction or in the same series of acts of transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). The Government's case is complex enough to warrant severance, but the indictment is sufficiently unified to support as minimal a severance as possible.

In addition, in *Gallo*, there were several other factors present that the court found persuasive in severing the defendants into seven different trials. First, there were few common witnesses who would be called to testify against the defendants in the seven different trials. *Gallo*, 668 F.Supp. at 758. In the present case, because all defendants are jointly indicted in the two conspiracy charges, there will undoubtedly be duplicative testimony and evidence. The Government has represented that their proposed order of trial will minimize the burden on witnesses and limit the amount of duplication in the presentation of evidence. *See* Government's Resp. to Defendants' Mots. for Relief from Improper Joinder and for Severance at 6. Although several defendants claim that severing their trials from all other defendants will not result in duplicative evidence, the Court must rely on the Government's representations at this point. The Government is the party that, at this stage, is the most familiar with the evidence and presentation of the witnesses. Because of the preliminary stage of the case, the defendants have not yet had access to the en-

tirety of the Government's evidence. Federal district courts involved in complex, multi-defendant criminal litigation have recognized the court's access to limited information. *United States v. Andrews*, 754 F.Supp. 1197 (N.D.Ill.1990) (recognizing in a thirty-eight defendant trial that "at any time prior to trial the government is the only party with complete knowledge of the evidence that it intends to present," and relying on government's suggestions for joinder and severance). As the Government's case-in-chief develops, the Court will continue to monitor the propriety of joinder.

In addition to the lack of duplicative witnesses, one of the *Gallo* defendants that the court decided to sever was then involved in another lengthy criminal trial; complete joinder would have meant the delay of trial until the resolution of the other trial. *Gallo*, 668 F.Supp. at 746. There is no reason for such a delay here; only one defendant, Brian Bostick, is currently involved in another criminal trial, and that trial is nearing completion. *See United States v. Edelin*, 98–cr–264–16 (RCL) (D.D.C.).

For the foregoing reasons, this Court finds that despite the general presumption favoring joinder, some form of severance is necessary because of the physical limitations of the courtroom and hardship on the jurors, the defendants, and the Court. Severance, however, should be of the most limited form necessary to satisfy those interests, because the Court finds that joinder of defendants, to the extent possible, will preserve judicial resources and permit the jury to have as complete a view of the evidence as possible.

Several defendants have moved for complete severance or other joint trial configurations based on Rule 14 concerns of prejudice against defendants. In order to prevail upon a claim for severance, a de-

fendant must show that joinder would violate that defendant's constitutional fair trial rights, or would "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), *cited in United States v. Edelin*, 118 F.Supp.2d 36, 41 (D.D.C.2000). There are several ways to meet this "heavy burden" of showing prejudice. *United States v. Spitler*, 800 F.2d 1267, 1271 (4th Cir.1986); *Edelin*, 118 F.Supp.2d at 41. Specifically, defendants in this case have claimed severance is warranted because of the disparity of evidence between them and other co-defendants, their need for the testimony of a co-defendant, and the inherent prejudice of being tried before a "death-qualified" jury. The Court now turns to those arguments.

### b. Disparity of the Evidence

■ Severance may sometimes be appropriate in instances where the voluminous or gruesome evidence against one defendant overwhelms the *de minimus* evidence against the co-defendant(s). *See United States v. Sampol*, 636 F.2d 621 (D.C.Cir.1980) (severance granted where one defendant charged with two murders and co-defendant charged with false declarations and misprision of felony). A showing that there is more evidence against one defendant, that there are more charges against one defendant, or that the evidence is stronger against one defendant than against others is insufficient to prevail on a demand for severance. *See Blumenthal v. United States*, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947); *United States v. Perholtz*, 657 F.Supp. 603 (D.D.C.1986). In particular, where conspiracy is a dominant element and the Government must prove agreement among several co-defendants, joinder is presumed despite the fact that the evidence may show that some defen-

dants were "kingpins" and others were less active. *See United States v. Edelin,* 118 F.Supp.2d 36, 43 (D.D.C.2000) ("[S]everance is not appropriate merely because some co-conspirators were more active in the conspiracy, nor because some co-conspirators played a more central role."). In order to make a valid claim for severance, the defendant must show that as a result of these evidentiary disparities, there will be undue prejudice against the defendant or the jury will be unable to "compartmentalize" the evidence against the defendants. *Zafiro v. United States,* 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). As was discussed above, proper jury voir dire and curative instructions may be used to cure any possibility for prejudice or jury confusion in all but the most extreme cases. *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), *cited in Edelin,* 118 F.Supp.2d at 42.

■ Defendant Franklin Seegers claims that his trial should be completely severed from all other defendants because the evidence against the other defendants is overwhelming compared to the evidence against defendant Seegers. *See* Def. Franklin Seegers' Mot. for Relief from Prejudicial Joinder at 4. Defendant Seegers' argument fails for two reasons. First, defendant Seegers' claims of prejudice are conclusory and without factual support. Second, the facts that are known support defendant Seegers' joinder with the other defendants; he has been indicted for Conspiracy, RICO conspiracy, First Degree Murder While Armed of Diane Luther, Continuing Criminal Enterprise Murder of Diane Luther, Killing Witness Diane Luther, Assault with Intent to Murder While Armed of Lincoln Hunter, Attempted Murder in Aid of Racketeering of Lincoln Hunter, and two counts of unlawful possession with intent to distribute cocaine base, cocaine, and heroin. The evidence against defendant Seegers, when compared to the evidence against his co-defendants, does not create a disparity that is sufficient to warrant severance.

Defendant James Alfred also claims that he has been prejudicially misjoined. Specifically, defendant Alfred claims that he was involved in the conspiracy in only a very limited way, and has only been indicted in connection with one death. *See* Def. James Alfred's Mot. for Severance at 1–3. Defendant Alfred's claim fails for the same reason as defendant Seegers': defendant James Alfred is indicted for Conspiracy, RICO Conspiracy, First Degree Murder While Armed of Joseph Thomas, Continuing Criminal Enterprise Murder of Joseph Thomas, and several counts of illegal Use of a Communication Facility. The evidence against defendant Alfred, when compared to the evidence against his co-defendants, does not create a disparity that is sufficient to warrant severance.

Defendant John Raynor claims that joinder will be prejudicial because the evidence against other defendants is far more damaging and voluminous than the evidence against Mr. Raynor. *See* Def. John Raynor's Mot. for Severance of Defs. with Point and Authorities in Support Thereof at 2. Defendant Raynor is charged with Conspiracy, RICO Conspiracy, First Degree Murder While Armed of Dwayne Valentine, Continuing Criminal Enterprise Murder of Dwayne Valentine, First Degree Murder While Armed of Marco Smith, Murder in Aid of Racketeering of Marco Smith, First Degree Murder While Armed of Ervon Clyburn, Murder in Aid of Racketeering of Ervon Clyburn, Killing Witness Ervon Clyburn, First Degree Murder While Armed of William Floyd, Murder in Aid of Racketeering of William Floyd, First Degree Murder of Anthony Watkins, Murder in Aid of Racketeering of

Anthony Watkins, First Degree Murder of Derrick Edwards, Murder in Aid of Racketeering of Derrick Edwards, two counts of unlawful possession with intent to distribute cocaine base, cocaine, and heroin, and three counts of illegal Use of a Communication Facility. The charges and evidence against defendant Raynor can hardly be called *de minimus, see* Def. John Raynor's Mot. for Severance of Defs. at 2. The evidence against defendant Raynor, when compared to the evidence against his co-defendants, does not create a disparity that is sufficient to warrant severance.

Defendant Calvin Smith claims that joinder is improper because the evidence against defendant Kevin Gray and defendant Rodney Moore is overwhelming in comparison with defendant Smith. It may be that the charges against defendants Gray and Moore are more numerous than those against defendant Smith, but that is not an independent basis for severance-there must be a specific claim of improper prejudice resulting from joinder that may not be cured by voir dire and jury instructions. *See United States v. Edelin*, 118 F.Supp.2d 36 (D.D.C.2000); *see also Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). Defendant Smith is indicted for Conspiracy, RICO Conspiracy, First Degree Murder of Anthony Dent, Continuing Criminal Enterprise Murder of Anthony Dent, Assault with Intent to Murder Shawn Burton, First Degree Murder of Henry Lloyd, Continuing Criminal Enterprise Murder of Henry Lloyd, Assault with Intent to Murder Witness # 2, Assault with Intent to Murder While Armed of Witness # 3, Assault with Intent to Murder While Armed of Witness # 4, First Degree Murder of Eric Moore, and First Degree Felony Murder While Armed of Eric Moore. The evidence against defendant Smith, when compared to the evidence against his co-

defendants, does not create a disparity that is sufficient to warrant severance.

Defendant Smith makes an ancillary claim, loosely based on a disparity of the evidence argument, that severance is warranted because of the negative publicity about defendant Gray. Defendant Smith cites no legal support for his argument, and makes no cognizable argument that this publicity will result in a level of prejudice warranting severance. *See* Mots. for Severance and Misjoinder of Offenses, at 4-5.

■ Defendant Lionel Nunn claims that he should be severed from defendants Gray and Moore because his involvement in the alleged conspiracies was much more limited, both in terms of temporal measurement (Mr. Nunn is alleged to have participated in the conspiracy for less than one year) and the numerosity of the charges. *See* Def. Nunn's Objections to Joinder and Mot. for Severance at 13. Neither of these claims is sufficient to prevail upon a demand for severance. First, the amount of time that a defendant was involved in an alleged conspiracy has never been recognized as a valid basis for severance, and defendant Nunn is unable to provide legal authority to support this claim. Second, even if the Court were to accept *arguendo* defendant Nunn's argument that he was only involved with the conspiracy for a short period of time, defendant Nunn amassed charges and evidence against him at a level far beyond the minimum necessary to support a valid joinder. Defendant Nunn is alleged to have committed First Degree Murder While Armed of Carlos Cardoza, Murder in Aid of Racketeering of Carlos Cardoza, Killing Witness Carlos Cardoza, First Degree Murder of Anthony Watkins, Murder in Aid of Racketeering of Anthony Watkins, and several charges of illegal Use of a Communication Facility. Defendant

Nunn's demand for severance on the basis of disparity of the evidence is without foundation, and any potential for prejudice against Mr. Nunn may be cured through the use of proper instructions to the jury. The evidence against defendant Nunn, when compared to the evidence against his co-defendants, does not create a disparity that is sufficient to warrant severance.

Defendant Larry Wilkerson demands to be severed from all co-defendants because of the disparity in evidence between defendant Wilkerson and the other defendants. As an ancillary claim, defendant Wilkerson bolsters his claim of disparity of evidence by arguing that he has a statute of limitations defense to the Conspiracy charges and other substantive charges. See Def. Larry Wilkerson's Objection to Joinder, Mot. for Severance, and Reservation of Right to Renew Mot. for Severance at 16–17. At this time, defendant Wilkerson has been charged with Conspiracy, RICO Conspiracy, First Degree Murder of Darrell Henson, Continuing Criminal Enterprise Murder of Darrell Henson, First Degree Murder While Armed of Marvin Goodman, Continuing Criminal Enterprise Murder of Marvin Goodman, First Degree Murder of Christopher Burton, Continuing Criminal Enterprise Murder of Christopher Burton, First Degree Felony Murder of Scott Downing, Continuing Criminal Enterprise Murder of Scott Downing, First Degree Murder of Scott Downing, and several counts of Use of a Firearm. If defendant Wilkerson is entitled to have some charges stricken because of the applicable statute of limitations, the Court may re-evaluate the propriety of joinder at that time. The evidence presently against defendant Wilkerson, when compared to the evidence against his co-defendants, does not create a disparity that is sufficient to warrant severance.

Defendant Frank Howard moves for severance on the basis of disparity of the evidence. At best, defendant Howard alleges the possibility of prejudice, but makes no specific showing other than simple disparity of the evidence, which is insufficient to prevail on a claim for the necessity of severance. Defendant Howard is charged with Conspiracy, RICO Conspiracy, First Degree Murder of Ricardo Bailey, Continuing Criminal Enterprise Murder of Ricardo Bailey, Killing Witness Ricardo Bailey, Assault with Intent to Murder While Armed of Witness # 6, Attempted Murder in Aid of Racketeering of Witness # 6, Attempted Murder of Witness # 6, and illegal Use of a Firearm. The evidence against defendant Howard, when compared to the evidence against his co-defendants, does not create a disparity that is sufficient to warrant severance.

Defendant Timothy Handy moves to have his trial severed from defendants Gray, Moore, and the other defendants who were named for the first trial in the Government's Proposed Order of Trial. Defendant Handy claims that because two of the overt acts alleged against defendant Handy were allegedly committed after defendants Gray and Moore were incarcerated, none of the wiretaps taken during the Government investigation inculpate defendant Handy, and the Government's proposal that defendant Handy be tried separately from his alleged co-defendants in the murder of Richard Simmons, there is a disparity in the evidence that warrants severance. See Def. Timothy Handy's Mot. to Sever Defs. and Counts. Despite the evidentiary and temporal disputes concerning the indictment against defendant Handy, severance is not warranted in this instance. Defendant Handy is charged with Conspiracy, RICO Conspiracy, First Degree Murder While Armed of Richard Simmons, Murder in Aid of Racketeering

of Richard Simmons, Tampering with Witness Richard Simmons, First Degree Murder While Armed of Demetrius Green, Murder in Aid of Racketeering of Demetrius Green, Assault with Intent to Murder While Armed of Witness # 6, Attempted Murder in Aid of Racketeering of Witness # 6, Attempted Murder of Witness # 6, and several charges of illegal Use of a Firearm. The evidence against defendant Handy, when compared to the evidence against his co-defendants, does not create a disparity that is sufficient to warrant severance.

Defendant Rodney Moore moves to be severed from all other defendant or, in the alternative, severed from defendants Gray, Seegers, and Johnson. Defendant Moore asserts that the evidence against defendant Gray is overwhelming, and the jury will be unable to compartmentalize the evidence against defendant Gray and any other defendant. *See* Def. Mot. for Severance of Defs. at 2. Defendant Moore supports his argument with a lengthy quotation from *United States v. Andrews*, 754 F.Supp. 1161 (N.D.Ill.1990), where the district court held that severance was warranted in a thirty-eight defendant, 175–count indictment. Defendant Moore's reliance on *Andrews* is misplaced for several reasons. First, the *Andrews* court counseled severance as a means for handling the many practical difficulties of trying complex, multi-defendant trials. *Id.* This Court recognizes those difficulties, and has decided to divide the defendants into two trials in order to mitigate those difficulties. Second, the citation which is provided by defendant Moore was for that court's preliminary order, which was then reconsidered and vacated in part after the government submitted a proposed order of trial. During the period before the second order, the government conceded that some of the conspiracy evidence was "quite circumspect" and agreed to dismiss "dozens upon dozens" of conspiracy charges against particular defendants, which supported that court's decision that severance was warranted to protect the interests of the court and of defendants. *United States v. Andrews*, 754 F.Supp. 1197, 1200 (1990). The Government has yet to make a concession of that type in this case. Defendant Moore is charged with Conspiracy, Continuing Criminal Enterprise, and RICO Conspiracy. In addition, defendant Moore has many other charges related to the deaths of Anthony Dent, Marvin Goodman, Corey Royster, Andrew Robinson, Ronald Powell, Dwayne Valentine, Marco Smith, Garlan Baskerville, Joseph Jones, Diane Luther, Ervon Clyburn and Roy Cobb. Defendant Moore is also charged in connection with the alleged assaults on Lincoln Hunter and Shawn Burton, attempted murder of Witness # 1 and several illegal Uses of a Firearm. The evidence against defendant Moore, when compared to the evidence against his co-defendants, does not create a disparity that is sufficient to warrant severance.

Defendant Moore makes a related argument for severance, asserting that wiretaps admissible against defendant Gray will serve to improperly bolster the confidential informants that will testify for the Government. Defendant Moore's claim does not provide a sufficient basis for this Court to find prejudice warranting severance. The jury is presumed to follow the directions of the Court, and defendant Moore may certainly suggest an appropriate curative instruction if one is found to be necessary.

█ Defendant Gray asserts that he should be severed from all other defendants based on a novel "reverse" disparity of evidence theory; defendant Gray claims that because the charges against him is so voluminous when compared to the evi-

dence against co-defendants, the jury will presume that he is a "mastermind." *See* Mr. Gray's Resp. to the Government's Severance Mot. at 5. Defendant Gray is unable to cite any case where this theory of prejudice has been recognized; while this Court is unwilling to hold that the "reverse disparity" argument may *never* make a valid claim of prejudice, defendant Gray does not meet his burden of showing prejudice in this instance.

Based on the foregoing analysis, none of the defendants has made a valid claim of prejudice based on disparity of the evidence. To warrant severance as a remedy, there must be a great disparity in evidence, and the disparity must create a viable possibility that the jury, even with the aid of curative instructions and appropriate voir dire, will be unable to compartmentalize the evidence between defendants or will be impeded in their duty to render a fair assessment of guilt or innocence. That standard has not been met here by any defendant.

### c. Testimony of Co–Defendant

A claim of prejudice may be substantiated by a showing that a defendant requires the testimony of a co-defendant in order to support his defense. Defendant Moore makes such a claim, asserting that the testimony of defendant Seegers is necessary to his defense. Defendant Moore's claim is insufficient.

▆ In order to claim that severance is appropriate because of one defendant's need for another defendant's testimony, the moving defendant must make a threshold showing of a *bona fide* need for the testimony, the substance of the desired testimony, the exculpatory nature and effect of the testimony, and the likelihood that the co-defendant would actually testify. *See United States v. Ford,* 870 F.2d 729, 731 (D.C.Cir.1989). Defendant Moore

has not made such a proffer, so his claim for severance based on his need for defendant Seegers' testimony is DENIED.

### d. Death–Qualified Jury

Several defendants have asserted that severance from the first trial is necessary because a "death qualified" jury-that is, one that has indicated in jury selection that it is capable of following this Court's instructions regarding the death penalty-will be inherently more "pro-prosecution" than a non-death-qualified jury. In addition, several defendants object to the additional procedures that will be required to seat a death-qualified jury; jury selection may be more time-consuming, there are different procedures for the use of peremptories, and the like. The Court finds that these arguments do not warrant severance.

▆ Defendants are entitled to a jury drawn from a venire that represents a "fair cross-section" of the community. *See Taylor v. Louisiana,* 419 U.S. 522, 528–29, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). The jury that is ultimately empaneled need not meet the "fair cross-section" requirement. *See Holland v. Illinois,* 493 U.S. 474, 480–84, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). Defendants may challenge the jury selection process on constitutional grounds as a violation of fundamental fairness in limited situations where, for example, law enforcement officials played an improper role in jury selection. *See, e.g., Anderson v. Frey,* 715 F.2d 1304 (8th Cir.1983) (reversing conviction where sheriff's employees handled criminal investigation and selected supplemental prospective juror). Defendants may also challenge the jury selection process where a "distinctive" group has been systematically excluded from jury service, *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), or where the jury selection process is suscep-

tible to an abuse or partiality that results in a skewed selection process, *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977).

The challenge that defendants Seegers, Smith, Nunn, Moore, and Howard have brought against a death-qualified jury is one type of fair-cross-section challenge to the jury selection. In essence, those defendants claim that the jury selection process necessary to empanel a death-qualified jury violates their Sixth and Fourteenth Amendment rights because the selection process removes those jurors who are either unwilling to impose a capital sentence under any circumstances or are willing to impose a capital sentence outside the bounds that will be set for the jury in the Court's instruction. Despite the initial intuitive appeal of the argument that a death-qualified jury may be inappropriately skewed during the guilt phase of a trial, previous federal courts that have examined the issue have found that the social science evidence for the proposition is unconvincing and, even assuming *arguendo* that the social science evidence were conclusive, no constitutional violation had been proven.

In *United States v. Edelin*, 118 F.Supp.2d 36, 45–50 (D.D.C.2000), this Court faced the identical issue now presented. In that case, five non-capital defendants sought severance from one capital defendant on the same basis asserted by defendants in this case, and the capital defendant also sought severance. In *Edelin*, this Court held that the rights of neither the non-capital defendants nor the capital defendant were violated by having one joint trial before a death-qualified jury. *Id.* The Court's analysis was based on the two Supreme Court cases that have dealt most directly with the distinctions between death-qualified and non-death-qualified juries, *Buchanan v. Kentucky*,

483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987), and *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). Although defendants' claims in the instant case are not distinguishable from the assertions in *Edelin*, the arguments for severance on the basis of jury composition must be evaluated on a case-by-case basis to determine whether the jury selection and trial process is fundamentally fair to each defendant.

In *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), the Supreme Court upheld the use of a death-qualified jury in the guilt phase of a capital defendant. That defendant asserted his right to a non-death-qualified jury at the guilt phase, claiming that a death-qualified jury would be more likely to convict, and that it was unnecessary to use a death-qualified jury when the issue of capital punishment was not at issue in the decisions before the jury. The Court found that the social science evidence presented by the defendant was not persuasive, *id.* at 171; moreover, even assuming the validity of the social science studies, the Court found that there had been no constitutional violation, *id.* at 173. The Court held that jurors who were opposed to the death penalty did not constitute a "distinctive" group for the purposes of jury selection, so neither the Sixth Amendment nor the due process clause of the Fourteenth Amendment were violated. *Id.* at 175. *Lockhart* is factually distinguishable from the instant case, because there were no non-capital defendants before the *Lockhart* Court. Nonetheless, the *Lockhart* analysis about the validity and impartiality of a death-qualified jury is instructive and persuasive.

In *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987), the Supreme Court dealt with a case that is virtually on point. Although the non-capi-

tal defendant in *Buchanan* did not ask for severance, the defendant did object to the death-qualified jury, and did ask for a non-death-qualified jury to be empaneled for the guilt-innocence phase of the trial. *Id.* at 407, 107 S.Ct. 2906. The Court held that a death-qualified jury was equally able to try a non-capital defendant; a defendant is entitled to "jurors who will conscientiously apply the law and find the facts," *id.* (quoting *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)), but is not entitled to jurors who have particular political views. Although there may be a minor factual distinction between the instant case and the facts presented to the *Buchanan* Court, that Court clearly addressed the issue of potential prejudice against a non-capital defendant resulting from a death-qualified jury empaneled to hear the guilt phase of a trial, which is the issue that unites *Buchanan* with the case before this Court.

■■■ This Court's holding today is in accord with its prior holding in *United States v. Edelin,* 118 F.Supp.2d 36 (D.D.C. 2000), and with the Supreme Court's holdings in *Buchanan* and *McCree.* Defendants have been unable to show that there is unfair prejudice that results from empaneling a death-qualified jury to act as the fact-finders in the guilt phase of a trial in which non-capital defendants are tried alongside capital defendants. In addition, this Court's reasoning in *Edelin* that capital defendants are afforded an equal level of protection to non-capital defendants applies with full force. *Edelin,* 118 F.Supp.2d at 48. There, the Court noted that if a death-qualified jury is able to try the guilt-innocence phase of a capital defendant, it would be illogical to conclude that empaneling the same jury would result in unconstitutional prejudice to non-capital defendants. *Id.* at 48; *cf. Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986) (upholding the constitutionality of using a death-qualified jury in the guilt-innocence phase of a capital defendant). The same is true here-capital defendants and non-capital defendants are afforded an equal right to an impartial jury, and the rights of neither group are offended by the use of a death-qualified jury.

Defendant Moore makes a related motion, asserting that if the same jury is used in both the guilt and penalty phases, the jury would be unable to compartmentalize the evidence from each phase. *See* Def. Moore's Supplemental Memorandum Concerning Severance of Defs at 9. This Court presumes that the relief defendant Moore is seeking is to empanel a separate, non-death-qualified jury for the guilt-innocence phase. Defendant Moore's argument fails for two reasons. First, the jury is presumed to follow the Court's instructions, and there has not yet been any indication in this case that the jury will be unable to heed the instructions by this Court. Second, the jury is not required to strictly compartmentalize the evidence from the guilt phase and the penalty phase. The Supreme Court has recognized the Government's legitimate interest in empaneling a single jury to hear both phases of the trial, the "possibility that a defendant might benefit at the sentencing phase from any 'residual doubts' about the evidence at the guilt phase that the jury might have had," and the cost to judicial resources in requiring the defense and Government to present the same evidence in both phases of the trial. *Buchanan v. Kentucky,* 483 U.S. 402, 417, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987).

■■■ Lastly, defendant Nunn asserts that severance is warranted because defendants Gray and Moore will be allotted a larger number of peremptories than will the non-capital defendants. This is not a

proper grounds for severance, particularly because defendant Nunn has made no showing that allotting an unequal number of peremptories to capital and non-capital defendants will result in any form of cognizable prejudice to non-capital defendants. In addition, the number of peremptories allotted in a criminal case is governed by the Federal Rules of Criminal Procedure and the discretion of the trial judge. *See* Fed. R.Crim. P. 24(b); *United States v. Bentley,* 503 F.2d 957 (1974). In a prior multi-defendant criminal case, *United States v. Edelin,* the Court exercised that discretion to increase the number of peremptories allotted to each defendant to twenty for the capital defendant and fifteen to be shared among the five non-capital defendants. Transcript for *United States v. Edelin,* 98–cr–264 (RCL) (D.D.C.) at 5–6.

The Court does concede that empaneling a jury to try a case in which the death penalty is sought will be more time-consuming. That additional time in selecting a jury, however, is far outweighed by the additional time that would be required to conduct a completely separate trial. Concerns of judicial economy favor the joint trial of capital and non-capital defendants before a single jury.

In conclusion, the Government's Proposed Order of Trial, severing the defendants into two groups, represents a reasonable compromise between the competing interests. The Government's arrangement of the defendants appears to be, at least on the information now available, the most efficacious in preserving judicial resources, preventing duplicitous testimony and evidence, and reaching an expeditious resolution for all

defendants. This Court does note, however, that it will continually evaluate the propriety of joinder among the defendants.[2] *See United States v. Edelin,* 118 F.Supp.2d 36, 40 (2000) (citing *Schaffer v. United States,* 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960)).

### III  Joinder of Offenses

■ Rule 8(a), which provides the general standard for joinder of offenses, is inapplicable in multiple defendant trials, so the governing standard for both types of joinder is drawn from Rule 8(b) and its judicial interpretation. *See U.S. v. Wilson,* 26 F.3d 142, 153 n. 4 (D.C.Cir.1994) (in cases with multiple defendants and multiple offenses, "weight of authority in this circuit and elsewhere regards Rule 8(b) as providing the sole standard for determining the permissibility of joinder of offenses" (quoting *U.S. v. Jackson,* 562 F.2d 789, 793 (D.C.Cir.1977))). Rule 8(b) states that

> [t]wo or more defendants may be charged in the same indictment of information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendant may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

■ The standard enunciated in Rule 8(b), that joinder of offenses or defendants is proper where the alleged acts are part of the same series of acts or transactions, may be satisfied by the indictment alone where there is a conspiracy alleged. *United States v. Spriggs,* 102 F.3d 1245

---

**2.** Several defendants who have been joined in the second trial have moved orally and in written motions for the second group to be further severed. The Court will address that

question, if necessary, at a later date when the Court is able to fix a trial date for the second trial.

(D.C.Cir.1996) (citing *United States v. Perry,* 731 F.2d 985 (D.C.Cir.1984)).

Defendant Smith claims that the charges related to the deaths of Eric Moore and Anthony Dent are misjoined and should be severed. Defendant Smith's arguments fail to persuade the Court; merely because the charges appear to not directly involve the distribution of drugs does not discount their role in the overarching alleged conspiracy. The indicted charges are included in the indictment as parts of a series of acts of transactions, and the Court will not disturb the indictment at this time.

Defendant Wilkerson claims that the alleged murder of Darrell Henson is unrelated to the conspiracy alleged in the indictment. That act, however, was included as an overt act in furtherance of the conspiracy, and the Court will not disturb the indictment at this time. The same reasoning applies to defendant Wilkerson's further claims for severance of offenses based on the alleged murders of Christopher Burton, Marvin Goodman, and Scott Downing.

Defendant Handy claims that the drug distribution charges enumerated as overt acts 232 and 233 of Count One of Conspiracy should be severed because they occurred after the incarceration of Defendant Gray. In addition, defendant Handy claims that the alleged murder of Richard Simmons should be severed because the Government has moved to try defendant Handy's two alleged co-conspirators in that murder in the second trial. Neither of these claims is a valid claim for severance of offenses. Again, when a conspiracy is alleged, joinder of offenses under Rule 8(b) is satisfied by the face of the indictment.

Defendants Alfred and Nunn make general claims that the indictment describes several conspiracies and not one single overarching conspiracy. Again, this Court will not disturb offenses joined in the indictment at this time on the basis of generalized and conclusory arguments.

In conclusion, none of the defendants makes, at this time, a persuasive argument that any of the indicted offenses are misjoined.

Based on the foregoing analysis of the parties' motions, hearings before this Court, and the relevant analysis of other federal courts, it is hereby ORDERED that the seventeen defendants will be severed into two groups. The first group will consist of the following defendants: Kevin Gray, Rodney Moore, John Raynor, Frank Howard, Calvin Smith, Timothy Handy, and Lionel Nunn. The trial date set for the first trial is March 1, 2002. The second group will consist of the following defendants: Bryan Bostick, Roy Johnson, Kenneth Simmons, Wilford Oliver, Deon Oliver, Larry Wilkerson, Ronald Alfred, James Alfred, and Franklin Seegers. A trial date for the second group will be set at a later date, when the Court may ascertain the approximate of the conclusion of the first trial.

Based on the parties' motions, the hearings before this Court, and the analysis of decisions of other state and federal courts, the Court hereby DENIES the defendants' motions for severance of defendants, DENIES the defendants' motions for relief from improper joinder, DENIES the defendants' motions for misjoinder of offenses, DENIES the defendants' motions for severance of counts, and GRANTS the Government's Proposed Order of Trial.

SO ORDERED.